## Logan *versus* McNaugher.

The by-laws and usages of an unincorporated company, are analogous to the terms of an article of copartnership, and in buying into the partnership the purchaser of stock is bound to know the rules and regulations which govern it.

November 14th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1878, No. 194.

This was an action of assumpsit, brought by Arthur Hobson, trustee of the Allegheny Trust Company, against William P. Logan, as a member of the firm of William P. Logan & Bro., upon their endorsement of a certain promissory note, a copy of which is as follows:—

"$1250.00                        Pittsburgh, August 1st 1874.

Four months after date we promise to pay to the order of W. P. Logan & Bro., twelve hundred and fifty dollars, at No. 20 Fifth avenue, without defalcation.

           (Signed)                        CLARK & CO.

(Endorsed) W. P. LOGAN & BRO."

The plaintiff company was unincorporated, being composed of a number of individuals associated together as a copartnership in the banking business. Arthur Hobson having died since the bringing of the suit, the name of Joseph McNaugher was substituted upon the trial as trustee of the company in his stead.

The defence to the action being the plea of payment, and the protest of the note having been waived, the plaintiff merely offered the note in evidence, and rested.

[Logan *v*. McNaugher.]

The facts given in evidence on part of the defendant to establish the alleged payment, were as follows:—

In the fall of 1874, after this note had been running some time, one B. D. Moore, the holder of ten shares of stock in the plaintiff company, made a proposition to defendant to trade said stock for an equal amount in value which defendant owned in the Central Refining Company of Pittsburgh. This the defendant agreed to do, provided the plaintiff company would apply the Moore stock towards the payment of his said note, at its par value, amounting in all to $1000 (each share of the stock being of the par value of $100), and accordingly, before closing the transaction, the defendant went to the plaintiff bank to make inquiry on the subject. He there saw W. A. Reed, the president and treasurer of the company, and told him of the negotiation, and thereupon Reed agreed that if defendant would trade for the stock, it should be received as a credit on the note at par. The trade was then accordingly consummated, and defendant, at the same time, obtained from Moore an order for the transfer of the stock, under the arrangement agreed upon, a copy of which order was as follows:—

"Pittsburgh, September 30th 1874.

W. A. REED, president:

Please transfer ten (10) shares of your stock to W. P. Logan.
     (Signed)               B. D. MOORE."

The defendant, the same day or soon after, took this order to Mr. Reed, for the purpose of lifting the note by paying the difference in cash. Some conversation then ensued about a rebate of interest, the note not falling due for some time to come; but Reed objected to allowing the rebate, and it was then agreed that it should not be lifted before maturity. Reed, however, accepted the order at that time, and defendant left it with him for the purpose of making the transfer under the arrangement mentioned.

Subsequently, when the note became due, the defendant called at plaintiff company's bank to have the arrangement for lifting the note concluded, and was then informed by David Ray, the bookkeeper (and who was also the representative of Mr. Reed in the business of the bank, in the latter's absence), that Mr. Reed was sick at home and had left no instructions in regard to it. He proposed, however, that defendant should waive protest of the note, promising to see Mr. Reed about it. The defendant accordingly waived the protest, and afterwards visited the bank on several occasions to close up the transaction, and in course of a few weeks, Mr. Ray stated to defendant that he had received orders to accept defendant's check for the balance and deliver him the note. The defendant thereupon, in compliance with Mr. Ray's request, returned to his office and made out his check for $250 (being the full balance of the note after deducting the value of the stock),

[Logan v. McNaugher.]

which he sent over to the bank by Thomas S. Gillespie, his book-keeper. This was on the 14th of December 1874. Mr. Gillespie then delivered the check to the person in charge of the bank (who, he thought, was Mr. Ray), but the latter declined to give up the note till the check would be paid, the same not having been certi-fied. The check was, however, duly paid on presentation.

The defendant, regarding the matter as ended, gave himself no further concern about it, until informed, one day in the month of January following, that the bank had closed. He then went over to get his note, and seeing Mr. Ray there, said to him, that he (Ray) knew the note was paid, and he wanted it; to which Ray replied, that it was all right, and he would get the note and give it to him.

The defendant then left the bank, relying upon this promise of Mr. Ray's; but the next information he had about the note was a notice from the plaintiff's attorneys that it had been placed in their hands for collection, which was soon after followed by the summons in this case, calling upon him to pay the note a second time.

At the trial before White J., plaintiff's counsel offered in evi-dence, article fourth of the Articles of Association, for the purpose of showing that the stock could not be transferred without the con-sent of the board of directors, nor when a stockholder was indebted by note or otherwise to the bank.

Objected to as incompetent to affect the defendant, there being no evidence that he had any knowledge of such articles and by-laws, and as irrelevant.

Objection overruled, to which defendant's counsel excepted and a bill sealed.

In the general charge, the court, inter alia, said:

"I do not consider the transfer of stock as the turning point of the case. When Logan made the trade with Moore and had his interviews with Reed, he was bound to know that such an arrange-ment was not within the scope of the ordinary powers and duties of the president of the association. The power of Reed to make such an agreement, is, I think, the turning point of the case. And I think he had no such power. The agreement, therefore, if made by Reed, to take the stock in payment of the note, would not bind his co-partners, unless sanctioned or ratified by them. The board of directors were the general agents for the association, and repre-sented all the stockholders. Their agreement would be binding on all.

"If the jury find from all the evidence, that a majority of the board of directors sanctioned the alleged arrangement by which the ten shares of Mr. Moore's stock were to be transferred and received by the bank in payment of, or to be credited on, the note in suit, their verdict should be for the defendant, otherwise for the plaintiff.

[Logan *v.* McNaugher.]

" The declarations of the bookkeeper to Mr. Moore, of what the board of directors did, are not evidence of the action of the board."

Verdict for plaintiff for the full amount claimed, when defendant took this writ, assigning, inter alia, the admission of the above evidence and the foregoing portions of the charge.

*Thomas C. Lazear*, for plaintiff in error.—Reed was the cashier and executive officer of the bank, and it was within the scope of his authority to receive this stock in payment of a debt due the bank: Wharton on Agency, sect. 684; Story on Agency, sect. 114. And his declarations that the board of directors had ratified his act, were competent evidence of the fact: The Portland, 2 S. & R. 197; Hannay *v.* Stewart, 6 Watts 487; Stockton *v.* Demuth, 7 Id. 39.

*Marshall Brown* and *A. M. Brown*, for defendant in error.—We submit that there is no principle of law that would give the president and cashier, as executives of a bank, the wide range of power contended for by the learned counsel for plaintiff in error. Such a power is not to be presumed, and is not within the ordinary business scope of such officers; and unless the power to make the transfer of stock, and credit the same as part payment of the note sued upon, was expressly delegated by the board of directors to Reed, the case of the plaintiff in error must fail: Stewart *v.* Huntingdon Bank, 11 S. & R. 267, cited in Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 339; Bank of United States *v.* Dunn, 6 Pet. 51; United States *v.* City Bank of Columbus, 21 Howard 356.

The declarations of the cashier were not competent when the minutes of the board of directors would show what their action had been.

The judgment of the Supreme Court was entered, November 25th 1878,

PER CURIAM.—This is not a very clear case, but we think it is governed by the by-laws and usages of the association, which was unincorporated. While such an association has some analogy to a corporation in its by-laws and rules, it is still a mere *partnership*, and these laws and regulations are analogous to the terms of an article of co-partnership, by which each member binds himself to the others. This association permits a new partner to be introduced through a transfer of its stock, but upon its own terms. By its rules and regulations the stock of each partner is made liable for the partner's debts to the association, and its assignment is prohibited without the assent of the managing partners, called directors. In buying into the partnership the purchaser of the stock is bound to know the rules and regulations which govern it. He cannot ask to be made a partner unless upon the terms imposed

[Logan v. McNaugher.]

upon his entrance into the partnership. Had he inquired into the nature of the association, and the laws by which it is governed, he he would have discovered the terms of his admission, and have acted accordingly; otherwise he cannot complain.

Judgment affirmed.