C. T. Swoope, Appellant, *v.* Geo. P. Wakefield et al., Partners doing business as the Patrons Co-operative Association of Petersburg.

*Practice, Superior Court—Equity—Appeals—Binding force of Supreme Court equity rules—Necessity for brief statement of errors alleged.*

The equity rules published by the Supreme Court are prescribed under the authority of statute and have the force of law; they govern all equity proceedings in any of the courts of the commonwealth and are to be complied with in the Superior Court as fully as in the Supreme Court. A failure to file in the lower court a brief statement of errors alleged to have been made by an order or decree appealed from furnishes ground for quashing an appeal unless in the discretion of the appellate court they are permitted to be filed nunc pro tunc.

# SWOOPE v. WAKEFIELD.

*Equity practice—Effect of neglect to file exceptions to referee's ruling in court below.*

Where no exception to a ruling by a referee is filed after the report is made, in accordance with Rule 69 of the Supreme Court, the appellate court will not consider specifications of error for the reason that the question involved therein was not raised in the court below.

*Partnership—Dissolution by assignment.*

An assignment by one partner of his interests in a partnership works a dissolution thereof unless the articles provide otherwise.

*Partnership — Co-operative association—Withdrawal — Effect of assignment by member.*

Where the by-laws of a co-operative partnership association provide for the withdrawal of old and reception of new members under methods provided therein, a general assignment by a member constitutes a voluntary withdrawal subject to the provisions of the constitution and by-laws and the purchaser at the assignee's sale of the assignor's interest in such association becomes entitled only to the surrender value of shares of stock to which the assignor would have been entitled as a withdrawing member.

Argued March 21, 1899. Appeal, No. 150, Oct. T., 1898, by plaintiff, from decree of C. P. Huntingdon Co., Sept. T., 1896, No. 78, dissolving partnership, directing payment of a withdrawal value of the interest of an outgoing member of the partnership association. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Exceptions to referee's report upon bill, answer and proofs. Before BAILEY, P. J.

The facts sufficiently appear from the opinion of the court below as follows:

In the year 1877 a number of persons residing in Petersburg and vicinity, who were members of the Order of Patrons of Husbandry, organized themselves into an association called the Patrons Co-operative Association of Petersburg. The object of the association was to enable the Patrons of Petersburg and vicinity " to purchase their supplies and dispose of their products to the best possible advantage, to establish and maintain general trade in merchandise, farm products, machinery, etc., and for such purposes as may seem best for the benefit of the shareholders and customers."

[A constitution and by-laws were adopted for the government of the association. Any member of the Order of Patrons

344          SWOOPE *v.* WAKEFIELD.

of Husbandary in good standing was eligible to membership. Its officers were a president, secretary, treasurer and six directors, who had charge of all the property of the association and were declared its trustees.   Its capital stock was fixed at $2,000, to be raised in shares of $5.00 each, which were not transferable except to members of the order.   Interest at a rate not to exceed six per cent annually was to be paid on the stock.   The directors were to have a general oversight of the business.   When a member assigned a share of stock, the assignment was to be indorsed on the back of the certificate and the same surrendered to the directors before a new certificate could be issued to the assignee.

Any member ceasing to be a member of the Order of Patrons of Husbandry was excluded from membership in the association.

Article 5 of the by-laws provided for the withdrawal, exclusion or death of any member.   In case of withdrawal or exclusion, he should "receive payment of the capital advanced by him with all arrears of profit (if any) that may be declared at the first meeting of the board of directors after his withdrawal."

Upon the death of any member, his legal representatives were to be repaid all the capital owned by the deceased with all arrears of interest and dividends or profits that may be declared at the first meeting of the directors after notice of the decease of the member.

The constitution and by-laws are to be considered as articles of copartnership, and as between themselves the members are bound by their terms : Buckley v. Wood & Co., 4 Pa. Superior Ct. 391.

Henry W. Swoope was one of the original members of the association.   He took an active part in its organization and was present at the meeting of the members when the constitution and by-laws were adopted.] [6]   On April 4, 1895, he was the owner of ten shares of the stock and on that day made an assignment of all his property for the benefit of his creditors to W. A. Myton, who on the 1st day of October, 1895, sold and assigned these ten shares to C. T. Swoope, the plaintiff, for the sum of $130.   Neither of these assignments was indorsed on the back of the original certificates issued to H. W. Swoope, as required by section 2 of article 6 of the constitution.   C. T.

Swoope was not a member of the Order of Patrons of Husbandry, and, therefore, not eligible to membership in the association.

Henry W. Swoope had received interest upon his stock regularly and the yearly dividends upon his purchases until he assigned his stock.

The association conducted a general store in Petersburg, and continued the business the same after the assignment by Swoope of his share as before. At that time there were 151 shares outstanding.

C. T. Swoope, the plaintiff, claims that the assignment by H. W. Swoope for the benefit of the creditors worked a dissolution of the association and that it was the duty of the remaining members to have closed out the business, wound up the affairs of the association and divided the assets among the shareholders, and not having done so, but having continued the business with the goods and effects of the association, they must account to the plaintiff for their value at the time of the assignment by Swoope and not at the value of the stock on hand at the time of filing this bill, because the goods on hand now are not the identical goods on hand at the time of the assignment. At the time of Swoope's assignment the association was composed of over forty members.

We have no doubt under many recent decisions of our higher court, prominently Christy v. Sill, 131 Pa. 492, Powell's Appeal, 2 Pa. Superior Ct. 618, and Gwinn v. Lee, 6 Pa. Superior Ct. 646, that this association was a partnership and that the same rules that are applicable to ordinary partnership are equally applicable to it; therefore, the assignment by H. W. Swoope of his share in it for the benefit of creditors worked its dissolution in so far as the partnership relations had existed between him and the other members, but it does not follow that the retirement of Swoope would ipso facto prevent the remaining members from continuing the business with the effects of the previous partnership if they chose to do so. With this the assignee of the Swoope share had nothing to do. He had no right to any particular thing in specie. Parsons on Partnership (4th ed.), sec. 435. All that he had a right to require of the remaining partners was an ascertainment of the value of the share of Swoope at the time of the assignment and have it paid to him:

Durburrow s Appeal, 84 Pa. 404. He has no right to the corpus of the partnership property or any part of it.

If there were no method provided in the articles of association for ascertaining the value of a retiring partner's interest, then the disposal of its effects, closing out the business and winding up its affairs would be a necessary consequence of the dissolution.

[Section 3 of article 5 of the by-laws provides that upon the withdrawal or exclusion of any member, he shall receive payment of the capital advanced by him, with all arrears of profit (if any) that may be declared at the first meeting of the board of directors after his withdrawal. The next section (4) provides for the ascertainment of the value of a share of a member who may die. The evident intention of these provisions was that the death, withdrawal or exclusion of any member should not work a total destruction of the association and defeat the purpose of the organization. I am, therefore, of the opinion that said sections must be constructed so as to effectuate this clear intent of the parties. The assignment by Swoope to Myton I regard as a withdrawal from the association within the above section of the by-laws. It is entirely immaterial whether the withdrawal of a member was voluntary or involuntary. Its effect as to the remaining members would be the same.

It is argued that if Swoope had simply withdrawn and had not made an assignment of his shares their value would necessarily have been determined under the provisions of the by-laws referred to, but because he made an assignment to them, a different rule must obtain. No authority has been cited by counsel and I am unable to find any that lays down one rule for ascertaining the value of the interest of a partner before he assigns it, and a different rule when it passed into the hands of an assignee. The only effect of the assignment is to entitle the assignee to receive what the assignor would have been entitled to if he had not made an assignment. The equities of the remaining partners cannot be affected by the assignment of the retiring one.

"The by-laws and usages of the unincorporated company are analogous to the terms of an article of copartnership, and in buying into the partnership, the purchaser of stock is bound to know the rules and regulations which govern it:" Logan v. McNaugher, 88 Pa. 103.

I am, therefore, of the opinion that the value of the stock should have been ascertained in the mode pointed out in the by-laws.] [7]

The referee finds as a fact that the surrender value of this stock determined by the directors under the provisions of section 3 of article 5 of the by-laws at the time of the assignment was $13.00 per share. There is no allegation, proof or finding of fraud on the part of the directors. This valuation is to be taken as conclusive between the parties to this bill.

The referee also finds as a fact that at the time of the assignment H. W. Swoope was indebted to the association on a note for $38.77 with interest from March 19, 1895, and a book account of $17.86.

The account then between the plaintiff and defendants to this bill would, therefore, stand thus:

10 shares of stock at $13.00 per share,   .   .   $130.00
Deduct
Note, .    .    .    .    .    . $38.77
Interest from March 19, 1895,
  to May 4, 1895, .   .   .   . .30—$39.07
Book account,   .   .   .   .   . 17.86—56.93
                                            $73.07

Interest from May 4, 1895.

We have fixed May 4, 1895, as the date from which interest should be allowed, for the reason that under the section of the by-laws which we have held to be applicable to this case, the directors were to fix the surrender value of the stock at their first meeting after the withdrawal of a member. The directors were to meet monthly. The money was not payable until the amount was determined.

We sustain the exceptions filed by the defendants so far as indicated in the foregoing opinion and make the following decree:

[And now, July 19, 1898, this case coming on to be heard upon the exceptions to the findings of the referee, and after hearing and upon consideration, it is ordered, adjudged and decreed, that the partnership heretofore existing between H. W. Swoope and the defendants is dissolved and that the defendants pay to the plaintiff, the assignee of the interest of H. W. Swoope

therein, the sum of $73.07, being the value of his interest, as ascertained by the provisions of section 3 of article 5 of the by-laws (less the amount of his note and book account) with interest from May 4, 1895, and it is further ordered and decreed that the defendants pay the costs. The referee's fee is fixed at $100, being at the rate of $10.00 per day for ten days' employ.] [14]

*Errors assigned* among others were (1) in overruling plaintiff's objections to the offer of evidence of the constitution and by-laws of the defendant association and the minutes from the date of the association down. (6) Error in the finding of facts of the court below, reciting same. (7) To findings of fact and conclusion of law in the court below, reciting same. (8) In sustaining defendant's third exception to the report of the referee, which was as follows : " The referee erred in finding that the plaintiff was entitled to more than $13.00 for each share of stock purchased by him from Myton, assignee of H. W. Swoope." (14) To the decree of the court, reciting same.

*W. H. Woods*, with him *J. S. Woods*, for appellant.—The constitution and by-laws were not signed by H. W. Swoope. The contract of partnership must be voluntary, and all the partners must consent and agree to it : Parsons on Partnership, secs. 9, 10.

The clear intent and meaning of these provisions of the constitution and by-laws was that the retiring partner should receive his capital stock in full and his share of the profits, whatever they were, at the time of his withdrawal, not what they were six or nine months before.

As to the assignment being a dissolution, under the authorities cited by the learned judge it cannot be questioned; the referee so holds, so does the court below : Christy v. Sill, 131 Pa. 492 ; Powell's Appeal, 2 Pa. Superior Ct. 618 ; Gwinn v. Lee, 6 Pa. Superior Ct. 646 ; Horton's Appeal, 13 Pa. 67.

A partnership that has no stipulation as to when it will expire is a partnership at will, any member of the firm can terminate it at any time : Parsons on Partnership, sec. 306.

If the solvent partners, instead of winding up the concern, continue the business without stay or interruption they do so at their own peril : Parsons on Partnership, sec. 373.

If on the dissolution of a partnership and the withdrawal

of a member therefrom, the others take at once exclusive possession of the assets and the use of the same in continuation of the same business by themselves, they must account to the retiring partners as of the time of the latter's withdrawal and on the basis of the value of the partnership assets at that time: Parks v. Broadbent, 134 Pa. 322; Brown's Appeal, 89 Pa. 139; Beatty v. Wray, 19 Pa. 516.

A liquidating partner is not entitled to compensation for his services in settling up the partnership: Brown's Appeal, 89 Pa. 139.

*H. H. Waite*, for appellee.—If the members of this association were bound by the articles of association the decree of the learned judge of the court below should be sustained: Logan v. McNaugher, 88 Pa. 103.

An assignee for creditors is not a purchaser. He is a mere volunteer. The assignee claims through the assignor. His rights rise no higher: Kent, Santee & Co.'s Appeal, 87 Pa. 165.

OPINION BY BEAVER, J., May 18, 1899:

An important question of practice is raised by the preliminary motion to quash this appeal. Appellant failed to comply with the equity rules of the Supreme Court by filing "in the court below, with his notice of appeal, a brief statement of the errors he alleges to have been made by the order or decree appealed from or the findings on which it rests:" 159 Pa. xxviii. His reply is that he filed in this court the specifications of error required by our own rules and that, having complied with our rule in this regard, he has discharged his full duty. It is to be remarked, however, that the equity rules published by the Supreme Court are prescribed under authority of the statute and have the force of law. They govern in all equity proceedings in any of the courts of the commonwealth, and are to be complied with in this court as fully as in the Supreme Court. As was said in Barlott v. Forney, 187 Pa. 301, "They are not abrogated by the subsequent Act of May 19, 1897, P. L. 67. It is true that act repeals all prior acts intended to be changed or supplied by it, so that, as is provided in section 22, it 'shall furnish a complete and exclusive system in itself on all appeals,' but it was not thereby intended to interfere with the rules of equity practice,

either in the courts of first instance or here." It was held in the case just cited : " This default, however, is not necessarily fatal and in a case of mere oversight of counsel and where no special hardship would be imposed on the other party, we should be disposed to permit the filing of the statement nunc pro tunc." We therefore permit the statement required in the section on appeals in the equity rules to be filed nunc pro tunc, and consider the appeal upon the other questions involved therein.

In the hearing of the case before the referee, the plaintiff objected to the defendants' offer of the constitution and by-laws of the association, under which they conducted business, and the minutes from the date of the association. The objection was overruled and an exception allowed to the plaintiff and duly noted, but no exception to this ruling was filed after the report of the referee was made, in accordance with the requirements of the 69th rule of the Supreme Court rules of equity practice. We cannot, therefore, consider the first specification of error for the reason that the question involved in it was not raised in the court below. The same is true as to the second, third and fifth specifications.

The question of fact involved in the fourth specification was raised in the court below by a distinct exception to the finding of the referee and is, therefore, properly before us ; but, inasmuch as the number of shares in the co-operative association at the date of the assignment of H. W. Swoope to Myton can only be of practical importance, in case it can be held that Swoope's assignment worked a dissolution of the firm or association as among the partners or shareholders themselves, so that the entire assets of the association must be marshaled and distributed; and, inasmuch as we hold for reasons which will be presently stated that the assignment of Myton was equivalent to a withdrawal from the association and did not thereby work its dissolution, so far as the members thereof were concerned, it is not necessary for us to consider whether the finding of the court in this respect is correct or not, for the reason that the value of Myton's shares, the number of which is undisputed, must be determined in the way pointed out by the by-laws of the association, and not by a division of all of its assets among the shareholders in proportion to the number held by each respectively.

The practical question for our consideration and the controlling one in the case, is as to the legal effect of the assignment of H. W. Swoope. As preliminary to this is the question of the status of the plaintiff, who became the purchaser of the shares of H. W. Swoope at assignee's sale. It is conceded that he was not eligible to membership in the association, not being a member of the order known as Patrons of Husbandry. He is, therefore, entitled to all the rights of H. W. Swoope at the time of his assignment and no greater. He stands in the place of a partner or shareholder who has voluntarily deprived himself of membership in the association. He is in no sense a creditor of the partnership or association, and his rights are not those of a creditor. Nor is he a creditor of H. W. Swoope. His rights can certainly rise no higher than those of the assignor. The referee finds, as one of his conclusions of law, " That the ' Patrons Co-operative Association of Petersburg ' was a partnership which, under its constitution and by-laws, contemplated the withdrawal of old members and the reception of new members, and that, therefore, the withdrawal of the old or reception of the new members under the method provided by the constitution and by-laws did not dissolve the partnership," and in this he was undoubtedly correct. Whilst it is true, as a general proposition, as held in Horton's Appeal, 13 Pa. 66, that an assignment by one of two partners of his interest in the partnership works a dissolution of the partnership, for obvious reasons stated in the opinion of COULTER, J., it is, nevertheless, clearly recognized that the articles of copartnership may provide otherwise. The referee's final conclusion was based upon his finding " that C. T. Swoope did not become a member of the association and was not governed by its constitution and by-laws." In a sense this is true, that is, he was not governed as a member by the constitution and by-laws, but he was subject to them in that he could not become a member, because not eligible under their provisions, and also in seeking his rights as an assignee of a former member, which were to be determined under the constitution and by-laws as they affected his interest in the partnership. He was bound to know their provisions, for they practically constituted the articles of copartnership, and by them his rights were to be determined: Logan v. McNaugher, 88 Pa. 103. What were those rights? In other

words, what effect did the general assignment of H. W. Swoope for the benefit of creditors have upon his interest in the partnership? It was voluntary. It was not induced or compelled in any sense by his partners in the association. He was not forced out of the partnership, nor is there any allegation of any kind that he was wronged while a member of the association. He was unfortunate, but there is no allegation that his fellow-members were in any sense responsible for his financial condition. How can his assignment, therefore, be regarded in any other light than as a voluntary withdrawal, subject to the provisions of the constitution and by-laws of the association relating thereto?

The surrender value of shares of stock, as found by the referee at the date of the assignment, was thirteen dollars per share, and this was the amount allowed by the court below in deter mining the interest of the plaintiff. We cannot see that any wrong was done him by the court's computation and the decree based thereon.

Decree affirmed and appeal dismissed.